# JEFFREY A. BRONSTER, ESQ.
**ATTORNEY AT LAW**
**17 WENDELL PLACE**
**FAIRVIEW, NEW JERSEY 07022**

———

**(201) 945-2566**

**Facsimile:   (201) 945-2688**
**email:  jbronster@bronsterlaw.com**

**MEMBER OF NEW JERSEY & NEW YORK BAR**

June 12, 2023

Honorable Douglas E. Arpert
United States District Court
District of New Jersey
(*via PACER*)

      Re: Levin v. 35 Club LLC, et al.
         Case No. 3:22-cv-07143-GC-DEA

Dear Judge Arpert:

  Pursuant to your Honor's instructions, please accept this letter as an informal application by the defendants for a stay of this action pending the resolution of a pending criminal case. The Indictment in the criminal action is being submitted herewith as an exhibit.

  This lawsuit, like the Indictment, centers on an all-nude gentlemen's club located in Sayreville, known as 35 Club. The plaintiff describes herself in the First Amended Complaint as "an adult entertainer and masseuse" at the club. Her claims, under state and federal law, are that she was underpaid for her services, making the manner and method of her payment a central issue in the case. Quite simply, the case cannot go through discovery or trial without extensive exploration and discovery as to the work of the "adult entertainers" employed.

  Plaintiff has sued three different companies three different individuals in connection with the ownership, operation, and control of the club: 35 Club LLC, Stock Enterprise Inc., Alana Inc., Doreen Acciardi, Anthony Acciardi Sr., and Anthony Acciardi Jr. *But the ownership, operation, and control of the club is one of the central issues in dispute in the criminal case.* Answering any

discovery requests on that subject would require one of the individuals to give up his Fifth Amendment right against self-incrimination. Yet there are no other persons employed by the entities who would be in a position to respond to any such discovery requests.

The central allegation of the Indictment is that the "adult entertainers" at the club were regularly engaged in prostitution, allegedly with the knowledge and consent of the club's owners and operators. One of the primary "facts" that the allegation is based on is the manner in which the entertainers were compensated, including the fact that certain payments received by them from customers had to be shared with the club itself, and the fact that the entertainers supposedly paid for the right to work at the club. *These are the very issues at the heart of the Levin Amended Complaint*.

It goes without saying that any indictment is, by its very nature, a serious matter. But in this case, the State has woven its allegations of prostitution into a First Degree RICO count, the legal consequences of which the Court is undoubtedly familiar with. While the defendants certainly do not trivialize Ms. Levin's claim, they can hardly be expected to waive their Fifth Amendment rights in a racketeering case for the sake of defending her civil action for back wages.

Imposition of a stay is a procedural matter, and therefore will be decided here under federal precedent. In this district, judges generally begin by citing to *Walsh Securities Inc. v. Christo Property Management Ltd.*, 7 F.Supp.2d 523 (D.N.J. 1998). The Complaint alleged that the defendants had defrauded them through a scheme to fraudulently obtain mortgages. The United States Attorney's Office was also investigating the matter, but had not yet indicted anyone. In granting a stay of the civil case, the court identified six factors that should be considered:

1. The similarity of the issues in the civil and criminal cases, which it considered the single most important consideration;

2. The stage of the criminal proceedings. Atypically, the court issued a stay *even though* there was no indictment yet; here, the indictment has been filed and is pending.

3. Prejudice to the Plaintiff. The court noted that civil cases often suffer delays of months and years, and that such arguments as a plaintiff's deprivation of its money or the potential loss of memories are not "particularly unique" so as to deny the imposition of a stay;

4. The burden on the Defendants. This factor is connected to the similarity factor, in that the greater the risk that by providing discovery the defendant will have to provide information that can be used against him criminally, the greater the "burden" on the defendant in the denial of a stay;

5. Interests of the Court. The court noted the interest in judicial efficiency in the management of its caseload. In *Walsh*, the possibility that some defendants would invoke the Fifth Amendment created the prospect of "a constant stream of privilege issues", imposing an undue burden on the court;

6. The public interest. The prototypical example cited by *Walsh* was the *Kordel* case, in which the government was simultaneously pursuing criminal charges and a civil case, the object of which was to halt the distribution of mislabeled drugs. But here, as in *Walsh*, Plaintiff is attempting to vindicate a purely private financial interest. Although it can be anticipated that plaintiff will argue that enforcing the labor laws against the defendants will have a broader salutary public impact, the argument is mooted by the fact that 35 Club has been shut down, and has been refused the renewal of its license to operate.

The decision as to whether on not to issue a stay rests largely in the discretion of the court, and is highly fact-intensive. Cases in this district in which a stay has been granted, just within the past few years, include the following: *Licona v. Tunnel Barrel & Drum Co. Inc.*, 2023 WL 2644373 (Magistrate Judge Wettre); *Carlton v. Atlantic Co. Justice Facility*, 2022 WL 16922151 (Magistrate Judge King); *Terruso-Crespo v. Atlantic Count Justice Facility*, 2022 WL 263432 (Magistrate Judge King); *Doe v. New Jersey Dept. of Education*, 2022 WL 266673 (Magistrate Judge Skahill); and *GEICO v. Koppel*, 2021 WL 3661276 (Magistrate Judge Wigenton).[1]

---

[1] As this is not a formal motion, Defendant has not submitted copies of the unreported decisions, but will do so upon request.

As implied above, the court's decision will most commonly center on the similarity factor. Here, the "adult entertainer" plaintiff cakes the following claims, among others:

- that she was subject to "House Rules" that she was required to follow;

- that the defendants "determined the method and amount of payment" for the services that she provided to customers;

- that she was not paid any wages for the services she performed;

- that her income consisted solely of "gratuities" from patrons;

- that she had to pay her employer a mandatory fee for each work shift;

- that she was required to "share" her customer gratuities with the defendants.

The Court will see from the indictment that although there it contains numerous counts charging different offenses, virtually everything stems from and revolves around the allegations of prostitution. In the grand jury and in other court filings, the circumstantial evidence of the prostitution has included, and indeed has often focused on the manner in which the employees were paid, such as the allegation that the "entertainers" had to pay money to work there, and that certain "gratuities" had to be split with the club. Those alleged facts and the inferences the State had drawn from them are central to the case, and the overlap between the civil case and the criminal case could not be clearer or more dramatic.

Respectfully submitted,

/s/ *Jeffrey A. Bronster*

JEFFREY A. BRONSTER